IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| THE TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY a/s/o KENT AND KIMBERLY ROUSE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 CV 2386 |
| ELECTROLUX HOME PRODUCTS, INC., | ) ) | JURY DEMAND Honorable Judge Frederick J. Kapala |
| Defendant. | ) | Magistrate Judge P. Michael Mahoney |

**PLAINTIFF'S MOTION TO QUASH DEFENDANT'S RULE 30(b)(6) DEPOSITION NOTICES OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER LIMITING THE NOTICES**

Now Comes the Plaintiff, THE TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY a/s/o KENT AND KIMBERLY ROUSE (hereinafter TRAVELERS), and moves this Court for an order quashing Defendant's Rule 30(b)(6) Notice and Defendant's Amended Rule 30(b)(6) Notice (collectively the "Notice") or, in the alternative, for a protective order limiting the scope of the Notice to the requests in the same that relate to the adjustment of this loss and Travelers' answers to Defendant's interrogatories. In support of said motion, Plaintiff states as follows:

# I. INTRODUCTION

Through the guise of a 30(b)(6) deposition, the Defendant is undoubtedly going on a fishing expedition in the hopes of driving up litigation costs and putting pressure on the Plaintiff. Indeed, the action at bar is one for subrogation where Travelers *as*

*subrogee* has stepped into the shoes of its insureds, Kent and Kimberly Rouse, by virtue of the insurance contract between them. This is not an action against Travelers nor is it a class action lodged by Travelers. The concepts at issue involve product liability and the fault of the product manufacturer and the comparative fault, if any, of the product consumer, Mr. and Mrs. Rouse. Travelers rights are defined by and limited to the product liability claim that Mr. and Mrs. Rouse have against Electrolux, and whatever damages they may have sustained.

Yet, as is discussed herein, much of the Defendant's 30(b)(6) Notice seeks information well outside of the bounds of permissible discovery, focusing on Travelers and its practices and procedures. With the exception of the adjustment of this loss and the insurance contract between Travelers and its insureds, this action is not about Travelers and its internal policies, procedures, actions, etc. This suit, as framed by the pleadings, is only about the allegedly defective design of the Electrolux dryer at the home of Travelers' insureds and the conduct of those insureds. Accordingly, while the rules of discovery are liberal, Electrolux should not be permitted to use a 30(b) (6) Notice as a sword to drive litigation costs and abusively pressure Travelers to, one can only surmise, withdraw this action under threat that it would be compelled to produce broadly cast discovery about its underwriting operations and the handling of other unrelated claims that have absolutely no place in this product *liability action based on the rights of Mr. and Mrs. Rouse as consumers.* Indeed, there are absolutely no allegations in this litigation related to Travelers' business practices, such as its underwriting practices, claim handling and litigation decisions.

Moreover, Electrolux in its very objections to Plaintiff's Rule 30(b)(6) Notice recognizes that discovery is to be limited to information that is relevant to the claim and defenses to that claim.

> 6. Electrolux objects to this Notice to the extent any of the listed topics for examination seek information that is neither relevant to a claim or defense at issue in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

And, Electrolux seeks to limit Plaintiff's discovery to the very dryer at issue in the particular action.

> 8. Electrolux objects to this Notice to the extent any of the listed topics for examination purport to call for the production of documents or information related to "Similarly Designed Dryers," as such term has been previously defined, as requests for such information are vague, overbroad, unduly burdensome, and seek information that is neither relevant to a claim or defense at issue in the litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

See Paragraphs 6 and 8 of Electrolux's discovery response, attached hereto as Exhibit 1. In a classic example, therefore, of "wanting its cake and eating it too", Electrolux refuses to provide relevant discovery the Plaintiff has requested about all dryers of the same fundamental design as the one in this action, while propounding discovery that delves into the Plaintiff's business practices, claims, and subrogation lawsuits (most of which do not even involve Electrolux dryers). These positions are undoubtedly contrary and should not be permitted.

## II. FACTUAL BACKGROUND

By way of background, on May 4, 2008, the home of Kent and Kimberly Rouse was damaged due to a fire that originated with their Electrolux dryer. Travelers made

payment for the damages sustained by the Rouses pursuant to the terms of the policy that it had written. Travelers *as subrogee*, standing in the shoes of its insureds, filed this suit against Electrolux. Specifically, on March 30, 2012, Travelers filed a two count complaint charging the Defendant Electrolux with negligence and strict product liability in the design and manufacture of a defective product, a clothes dryer.

Defendant Electrolux filed an answer denying liability and raising the following affirmative defenses that focus on the conduct of the Rouses: (1) assumption of risk by the Rouses in their operation and maintenance of the subject dryer in a fashion contrary to Electrolux's recommendations; (2) the comparative fault of the Rouses in violating these recommendations; and (3) the comparative fault of the Rouses in failing to read and follow the warnings and instructions provided by Electrolux. The only conduct involving Travelers addressed by the Defendant's affirmative defenses was Travelers failure to "mitigate damages" by over paying the Rouses for their claim. Additionally, Electrolux has also filed affirmative defenses which aver that Travelers' suit is time barred by the Statute of Limitations, Laches and the Statute of Repose. (A copy of the Travelers' Complaint and Electrolux's Answer are attached as Exhibits 2 and 3).

On August 22, 2012, following a case management conference this Court entered an order requiring all pleadings to be amended no later than 12/21/2012. (A copy of this order is attached as Exhibit 4). To date, neither Plaintiff nor Defendant have filed an amended complaint, answer or affirmative defense, or sought to add an additional party. Thus, the existing pleadings define the issues before this Court and, as a result, define the issues upon which discovery can be sought. Accordingly, as framed by the pleadings, the issues in this case concern the cause of the subject fire, specifically whether any defect in

the design or manufacture of the Defendant's dryer caused in whole or part this fire, whether any conduct on the part of the Rouses' contributed in whole or in part to the fire and whether Travelers overpaid the claim submitted by them.

### III. ELECTROLUX'S RULE 30(b)(6) NOTICE IS LARGELY OUTSIDE THE SCOPE OF PERMISSIBLE DISCOVERY, SEEKING INFORMATION ABOUT TRAVELERS THAT BEARS NO RELEVANCE TO THIS ACTION

On or about October 30, 2012, Defendant served a Rule 30(b)(6) deposition notice upon the Plaintiff requesting a corporate designee or designees to testify on various topics, virtually none of which are relevant to any issue posed by the pleadings. Accordingly, on December 3, 2012, Travelers timely filed its objection to the Rule 30(b)(6) deposition notice. On January 2, 2013, Defendant amended this 30(b)(6) Notice as to the date and time of deposition proceeding, with the topic categories remaining the same. Accordingly, on January 4, 2013, Travelers renewed its objections and indicated that a corporate designee, Paul Strombeck, would be produced to testify on topics 21 and 22 of the Rule 30(b)(6) Notice, which concern the answers to interrogatories filed by Travelers and the training received by the damages adjuster. Travelers also offered to produce Mr. Strombeck to testify generally on the damages adjustment of this loss. Mr. Strombeck's deposition was scheduled for January 21, 2013. (Copies of the Electrolux's Rule 30(b)(6) Notice, Travelers objection to same, Electrolux's Amended Rule 30(b)(6) Notice and Travelers objection to the amended Notice are attached hereto and marked as Exhibits 5-8).

    A.    *The Rules of Discovery do Not Permit Electrolux's Abusive Tactics*

Electrolux's attempt to use abusive discovery tactics, seeking discovery undoubtedly well outside the issues in this matter to drive litigation costs and put pressure

on the Plaintiff is impermissible and should not be condoned. It is axiomatic that discovery rules are designed to assist the parties to secure information that is relevant and material to the issues presented in a case. Discovery is not intended to be an open ended all inclusive fishing excursion where every corporate document and/or representative is subject to scrutiny. *Kompare v Stein, 801 F.2d 883 (7th Circuit 1986).* Indeed, Rule 26 (b) defines the scope of permissible discovery by which each request is to be judged. In pertinent part, the Rule states:

> **"(b) Discovery Scope and Limits.**
>
> Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> **(1) In General.**
>
> Parties may obtain discovery regarding any matter, not privileged, that is **relevant to the claim or defense of any party**, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"… (emphasis added).

Here, the issues before the Court are defined by the Plaintiff's Complaint and the Defendant's Answer, and only information relevant to those claims and defenses may be had. However, as is described herein, the Defendant's Rule 30(b)(6) Notice seeks testimony that is neither relevant to the issues in this action nor would lead to relevant

information. Thus, the Notice can only be interpreted as an attempt to annoy, harass and place undue burden and expense on Travelers.

      B.    *Information Regarding Underwriting, Policy Exclusions and Other Claims is Irrelevant to this Action*

As Plaintiff's objections assert in more detail, See Exhibits 6 and 8, the majority of the Notice seeks testimony that is irrelevant to this action. By way of example, Defendant seeks information concerning Travelers underwriting policies, its risk assessments, insurance policy exclusions, history of claims, subrogation law suits (initiated against dryer manufacturers including Electrolux), and suits brought against Travelers for claim denials. (See Topics 1-6, 8, 10, 11 of Exhibit A of Exhibits 5 and 7). However, there was no denial of coverage in this action and the only insurance policy *potentially* at issue is that between Travelers and the Rouses (which have been produced). Travelers business practices, its corporate policies regarding underwriting, risk assessments, insurance policy exclusions, it history of claims, subrogation law suits (initiated against dryer manufacturers including Electrolux), and suits brought against Travelers for claim denials have absolutely no bearing on this case and this discovery, which pretends that Travelers is a party to the action separate from its capacity as subrogee for some undefined allegations, can only be viewed as a tactic to harass Travelers. Travelers' only legal capacity in the lawsuit is that of *subrogee* of Mr. and Mrs. Rouse. Travelers' subrogation rights are well defined in the State of Illinois and the damages it may seek are those that belonged to Mr. and Mrs. Rouse and transferred to Travelers. There are no independent claims *by* or *against* Travelers in this matter but only those of their insureds to which they have succeeded. *See: Insurance Co. of North America v. Morgan Dyeing & Bleaching Co., 262 F.2d 916 (7th Cir.1959); Dix Mutual*

*Insurance Co. v. LaFramboise*, 149 Ill.2d 314, 173 Ill.Dec. 648, 597 N.E.2d 622 (1992) and *Intergovernmental Risk Management On Behalf of Village of Bartlett v. O'Donnell*, 295 Ill.App.3d 784, 692 N.E.2d 739, Ill.App. 1 Dist. (1998). Accordingly, this type of discovery directed towards Travelers is irrelevant and improper.

    C.    *Spoliation is Not at Issue in this Action and Discovery Related to the Same is Irrelevant and Impermissible*

Additionally, the Notice also seeks testimony on topics related to spoliation, even though there has been no claim of spoliation leveled here. Indeed, Electrolux conducted a joint scene exam post-loss with the Plaintiff and two joint destructive exams without voicing or placing a claim of spoliation. (See Topics 7, 24 and 25 of Exhibit A of Exhibits 5 and 7 hereof). Accordingly, any discovery related to issues of spoliation is irrelevant, and can only be seen as an attempt to harass Travelers.

    D.    *The Notice Impermissibly Delves into Topics Protected by Work Product and Other Privilege*

Moreover, some of Electrolux's requests invade and violate work product as well as testifying and consulting expert privileges. Specifically, in requests 9 and 10, Electrolux seeks Travelers' analysis, including testing of Electrolux dryers as well as those of other manufacturers. Likewise, in request 23, even the person with knowledge as to the "timing" of the filing of this suit is the subject of a request. Such a request patently invades the Plaintiff's work product. Moreover, it is inexplicable how information as to the timing of when suit is filed could ever be considered relevant or lead to relevant information as to the cause of this fire, the defective nature of any involved product or the conduct of the Rouse relative to the Defendant's product. These examples further

indicate the impropriety of the majority of the Notice, and why the Notice, or the majority of it, should be quashed.

      E.    *There is No Basis for Seeking Testimony Regarding Blogs or Websites Without any Foundation that Travelers' Insureds Knew of their Existence*

Similarly without reason is Electrolux's request that Travelers produce the authors or contributors of blogs or web sites when there is no suggestion that the Rouses even knew of the existence of these online sites or ever read them. (See requests 13-20 of Exhibit A of Exhibits 5 and 7). In fact, the Rouses have not yet been deposed in this action, making the requests, at the very least, premature. Moreover, it is disingenuous to suggest that these web sites or their authors or contributors have relevant information to this case since Travelers' conduct, other than its damages adjustment, is not before this Court by way of the Complaint, Defense or any Affirmative Defense. Accordingly, the requests seeking this information are also improper, and only further evidence of the inappropriate nature of the Notice and what can only be perceived as Electrolux's threat that this action should be withdrawn.

      F.    *The Attendance of Travelers' Personnel at Certain Events, While Perhaps Interesting to the Defendant, Bears no Relevance to this Action*

Further, and even more preposterous, Electrolux seeks testimony regarding the attendance of individuals at events where dryer fires were a topic of conversation. (See request 12 of Exhibit A of Exhibits 5 and 7). While Electrolux undoubtedly might be curious about this information, it is not relevant to this action. Except as it relates to the damage adjustment for a dryer fire, the attendance by a Travelers' employee, agent or contractor at a seminar where dryer fires was a topic of discussion would clearly not lead to evidence that is material or relevant to any item of proof required to establish liability,

damages or an affirmative defenses. The fact of the matter is that this is another example of Electrolux's abusive attempt to delve into the Plaintiff's activities to serve its own purposes rather than seek discovery of relevant information.

G. *Discovery of Information Following the Date of this Loss, or Outside an Reasonable Period of Time, is Not Relevant to this Action*

In addition to the foregoing, a number of the requests seek information outside a reasonable period of time or even beyond the date of the loss; such information is clearly not relevant to the issues raised by the pleadings in this case and should not be allowed. For example Notice Topics 1, 6-11, 22, 24 and 25 specify no time period whatsoever, thus requiring Travelers to produce a corporate designee(s) to testify on information for time periods from the beginning of time and going well beyond any dates relevant to this case. Similarly, Requests 2-5, 12, 13-20 seek witness information well beyond the date of the subject loss, which would also be outside the bounds of any relevant time period here. This further emphasizes the pervasiveness and impropriety of the Notice and, for this reason as well, the Notice should be quashed.

H. *Travelers Will Produce its Property Adjuster to Testify as to the Permissible Topics in the Notice, Including the Adjustment of this Loss*

Finally, Travelers has tendered its property adjuster as its corporate designee to testify on the issues raised by Request 21, related to Travelers' responses to interrogatories, and Request 22, as it relates to the damage adjustment. However, with respect to the portion of Request 22 seeking testimony on the training of the persons conducting the investigation of the subject loss, that testimony is a matter to be addressed by the adjuster and Plaintiff's experts, who can testify on this subject at their depositions; seeking such testimony in the context of a 30(b)(6) notice is inappropriate.

## IV. CERTIFICATE OF COMPLIANCE WITH RULE 26 (c)(1).

In an effort to resolve this discovery dispute without court intervention, Travelers counsel, Robert J. Spinazzola and counsel for Electrolux, Matthew Kramer conducted a telephone conference on January 11, 2013. A copy of the confirming email identifying the issues discussed is attached and as Exhibit 9. The issues memorialized in that email remain unresolved.

## V. CONCLUSION

As the foregoing articulates, the majority of the information sought in the Notice does not relate, nor could it ever lead to evidence concerning the cause of this fire, any issue with the manufacture or design of the dryer product, the conduct of the Rouses or the conduct of Travelers in evaluating the Rouses' damages. Undoubtedly, this is not an action against Travelers as the Notice suggests, this is an action where Travelers has merely stepped into the shoes of its insureds by virtue of an insurance contract and the law of the State of Illinois, and brought a negligence and products liability suit against Electrolux. Simply put, therefore, the information sought does not in any way relate to any item of proof in this case. Accordingly, Plaintiff respectfully moves this Court for an order quashing the Notices or, in the alternative, for a protective order requiring Plaintiff to only provide a corporate designee to testify on Topic 21 and Topic 22 (as it relates to the damages claimed in this case).

Respectfully submitted,

MAISEL & ASSOCIATES

By: /s/Robert J. Spinazzola
    Robert J. Spinazzola
    Attorney for Plaintiff
    MAISEL & ASSOCIATES
    161 N. Clark, Suite 800
    Chicago, Illinois 60601
    (312) 458-6500
    rspinazz@travelers.com
    General Email: RPMLaw1@travelers.com
    ARDC No. 6181417