**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| **THE TRAVELERS PROPERTY** | ) | |
| **CASUALTY INSURANCE COMPANY** | ) | |
| **Plaintiff,** | ) | **Case No: 12 C 02386** |
| | ) | |
| **vs.** | ) | |
| | ) | **District Judge Frederick J. Kapala** |
| **ELECTROLUX HOME PRODUCTS** | ) | |
| **Defendants.** | ) | **Magistrate Judge P. Michael Mahoney** |
| | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are three motions: (1) Plaintiff's Motion to Quash Defendant's Rule 30(b)(6) Deposition Notices or, In the Alternative, For a Protective Order Limiting the Notices; (2) Plaintiff's Motion to Quash Defendant's Subpoena or, In the Alternative, For a Protective Order; and (3) Defendant's Motion to Compel Discovery. For the reasons stated below, Plaintiff's Motion to Quash Defendant's Rule 30(b)(6) Deposition Notices is granted in part and denied in part, Defendant's Motion to Compel is granted in part and denied in part, and since neither party dealt with Plaintiff's Motion to Quash Defendant's Subpoena, or In the Alternative, For a Protective Order, the Court assumes the Motion is withdrawn without prejudice.

**<u>Background</u>**

This case involves a subrogation suit brought by Plaintiff, The Travelers Property Casualty Insurance Company ("Plaintiff or Travelers"), as subrogee of its insured, Kent and Kimberly Rouse ("Rouses"), against Defendant, Electrolux Home Products ("Defendant or Electrolux"), based on allegations of an alleged defect in an Electrolux clothes dryer that caused a fire in the Rouses' home.

1

The parties' discovery dispute centers around Defendant's list of topics contained in its 30(b)(6) Deposition Notice. Electrolux's 30(b)(6) Deposition Notice originally contained 25 topics. Of the original 25 topics, only topics 21 and 22 were agreed to by Travelers. After communications between the parties regarding the remaining 23 disputed topics, Plaintiff filed its Motion to Quash Defendant's 30(b)(6) Deposition Notice. On January 23, 2013, Electrolux narrowed the topics and sent Travelers a revised list of 15 topics. On January 28, 2013, Electrolux filed its Motion to Compel Discovery of the revised list of 15 topics. On January 24, 2013, Electrolux served a deposition subpoena upon John Vesey, requesting that Mr. Vesey appear on February 6, 2013 at 10:30 a.m. On January 28, 2013, Travelers filed its Motion to Quash Electrolux's subpoena of Mr. Vesey.

After a Discovery hearing on January 30, 2013, the parties were instructed by the Court to hold a Local Rule 37.2 conference by February 20, 2013, and to file a report of the conference with the Court by February 27, 2013. In the parties report, 14 of the 15 topics were organized into five categories:

(1)     Travelers' underwriting and subrogation practices, to the extent they relate to Electrolux-manufactured dryers; (Topics 1 and 15)

(2)     Travelers' testing of dryers that were either (a) manufactured by Electrolux, or (b) manufactured by another entity, to the extent those dryers differ from the Electrolux dryers in a manner believed to be relevant to a claimed defect; (Topics 2 and 3)

(3)     Travelers' attendance at conferences where Electrolux fires were discussed, including a specific conference where Electrolux understands Electrolux dryer fires to have been a specific subject of a formal presentation; (Topic 4)

(4)     Travelers' website and blog postings where Travelers advised homeowners to clean and maintaining their clothes dryers and venting; and (Topics 5—12)

(5)     Travelers' training of the party that handled the investigation of the
         claim on Travelers' behalf. (Topic 14)

The Court will rule on all 14 topics individually.

<u>Discussion</u>

**I.      Travelers' underwriting and subrogation practices, to the extent they relate
         to Electrolux-manufactured dryers.**

Travelers objects to Category 1 based on relevancy. Category 1 includes the following

topics:

(1)     Travelers' underwriting and subrogation practices and procedures, to the extent
         such practices and procedures refer to, reflect, or otherwise relate to Electrolux-
         manufactured dryers, including, by way of example but not limitation, the extent
         to which any belief on Travelers' part that Electrolux-manufactured dryers
         (including the dryer at issue in this litigation) are inherently defective bears on
         Travelers' decisions regarding whether to accept risk, or the manner in which
         Travelers values and prices such risk given such beliefs, as well as the procedures
         employed upon learning that a fire involved an Electrolux-manufacture dryer; and

(15)    The timing of Travelers' decision to pursue subrogation in this matter, the
         individuals that participated in the decision, and any policies, procedures, or
         claim handling guidelines triggered by Travelers' decision.

Travelers argues that its conduct is irrelevant to this action. Rule 26(b)(1) of the Federal

Rules of Civil Procedure sets the scope and limits on discovery. *Fed. R. Civ. P.* 26(b)(1). Rule

26(b)(1) states that "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery

regarding any non-privileged matter, that is relevant to any party's claim or defense." *Id.*

Specifically, Travelers asserts that any information regarding its underwriting and

subrogation practices are not relevant because it cannot be offered as evidence by the Defendant

on the issue of its affirmative defenses. In doing so, Travelers emphasizes that it is merely a

nominal plaintiff and its rights are entirely derivative. Rule 26(b)(1) states "[T]he court may

order discovery of any matter relevant to the subject matter involved in the action. Relevant

information need not be admissible at trial if the discovery appears reasonably calculated to lead

3

to the discovery of admissible evidence." *Fed. R. Civ. P.* 26(b)(1). Therefore, the issue before the court is whether Travelers' underwriting and subrogation practices, to the extent they specifically relate to Electrolux-manufactured dryers, appear reasonably calculated to lead to the discovery of admissible evidence. The Court finds that Travelers' underwriting practices could, but its subrogation practices are too remote.

Travelers' underwriting practices are a logical place where relevant information may be found. If Travelers asks its insured if they use an Electrolux-manufactured dryer, or if Travelers excludes coverage or requires increased premiums for Electrolux-manufactured dryers, the reasons for those decisions could lead to discoverable information.

With regard to Travelers' subrogation practices, Electrolux seeks testimony concerning "the procedures employed upon learning that a fire involved an Electrolux-manufactured dryer" and "[t]he timing of Travelers' decision to pursue subrogation in this matter, the individuals that participated in the decision, and any policies, procedures, or claim-handling guidelines triggered by Travelers' decision."

"Rule 26(b)(2)(C)(iii) empowers a court to limit the frequency or extent of discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit or that it is unreasonably cumulative or duplicative." See, *Fed R. Civ. P.* 26(b)(2)(C)(iii). After balancing the likely benefit of questions regarding Travelers' subrogation practices against its burden of production, the Court finds the burden outweighs the potential benefits.

In summation, the Court finds that Electrolux may not question Travelers regarding topic 15. Further, the Court has limited discovery relating to topic 1 to the following: Travelers' underwriting practices and procedures, to the extent such practices and procedures specifically refer to Electrolux-manufactured dryers.

4

II.     **Travelers' testing of dryers that were either (a) manufactured by Electrolux, or (b) manufactured by another entity, to the extent those dryers differ from the Electrolux dryers in a manner believed to be relevant to a claimed defect.**

Category II encompasses the following topics:

(2)     Travelers' analysis, including testing, of clothes dryers manufactured by Electrolux; and

(3)     Travelers' testing of clothes dryers manufactured by manufacturers other than Electrolux, to the extent the Electrolux-manufactured dryers differ from those manufactured by other manufacturers in a manner that Travelers believes to bear on any alleged defect in Electrolux-manufactured dryers.

Travelers argues that any testing of dryers done by a non-testifying expert would be protected under a consulting expert privilege. Travelers also argues that any testing done by an expert witness would be produced during expert discovery. "Federal Rule of Civil Procedure 26(b)(4)(B) prohibits parties from seeking: facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial." *Ludwig v. Pilkington N. Am., Inc.,* 03 C 1086, 2003 WL 22242224 (N.D. Ill. Sept. 29, 2003).

In determining whether a non-testifying expert was retained in anticipation of litigation, courts analyze the total factual situation of the particular case. *McNally Tunneling Corp., v. City of Evanston,* No. 00 C 6979, 2002 WL 59115, AT *2 (N.D. Ill. July 25, 2001). Courts do not require a lawsuit to actually be filed at the time the expert was retained. *Canal Barge Co. v. Commonwealth Edison Co.,* No. 98 C 0509, 2001 WL 845468, *1 (N.D. Ill. July 25, 2001). Rather, the proper inquiry is whether in light of the nature of the documents and the factual situation in the particular case, the documents can be fairly said to have been prepared or obtained because of the prospect of litigation. *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709

F. 2d 1109, 1118--19 (7th Cir. 1983) (citing 8 Wright & Miller, Federal Practice and Procedure 2024 (2d ed. 1994)).

Additionally, under Rule 26(b)(5)(A), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (1) expressly make the claim; and (2) describe the nature of the documents, communications, or tangible things not produced or disclosed . . ." *Fed. R. Civ. P.* 26(b)(5)(A). Further, the claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable. *United States v. First State Bank,* 691 F.2d 332, 335 (7th Cir.1982). The scope of the privilege should be "strictly confined within the narrowest possible limits." *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983) citing, *Wigmore, Evidence* 2291 (McNaughton rev. 1961); *United States v. Goldfarb,* 328 F. 2d 280 (6th Cir.), *cert. denied*, 377 U.S. 976, 84 S. Ct. 1883, 12 L. Ed. 2d 746 (1946); *In re Shapiro*, 381 F.Supp. 21 (N.D. Ill. 1974).

Consequently, if Travelers encounters questions regarding this topic that it feels are protected by privilege, it must demonstrate the privilege on a question-by-question basis. Travelers has not done so. As a result, Electrolux is entitled to question Travelers with regards to topics 2 and 3. However, the Court limits the scope of questions regarding these topics to the last five years.

### III. Travelers' attendance at conferences where Electrolux fires were discussed, including a specific conference where Electrolux understands Electrolux dryers to have been a specific subject of a formal presentation.

The next area of contention between the parties revolves around Travelers' attendance at various conferences where Electrolux-manufactured dryers may have been discussed. Specifically, Electrolux seeks discovery on the following topic:

6

> (4) The attendance of any of Travelers' employees, former employees, agents, contractors, or subcontractors in any conference, seminar, or meeting from 2002 to the present in which Electrolux clothes dryer fires were discussed, including, but not limited to, meetings held by the National Association of Subrogation Lawyers and any internal seminars or meetings.

Travelers argues that this topic is not relevant and is overly broad and unduly burdensome. In regards to relevancy, it is hard to imagine how questions regarding attendance of Travelers employees at meetings discussing Electrolux dryer fires would be reasonably calculated to lead to the discovery of admissible evidence. Assuming *arguendo*, that this topic met the standard for relevance, "Rule 26(b)(2)(C)(iii) empowers a court to limit the frequency or extent of discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit or that it is unreasonably cumulative or duplicative. The application of Rule 26(b)(2)(C)(iii) involves a highly discretionary determination based upon an assessment of a number of competing considerations." *Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004, 1017 (N.D. Ill. 2009) objections overruled, 06 C 3132, 2010 WL 780390 (N.D. Ill. Mar. 3, 2010).

The scope of Category 3 spans more than 10 years and includes all "employees, former employees, agents, contractors, or sub-contractors in any conference, seminar, or meeting . . ." In finding a corporate representative to testify to this topic, Travelers will likely have to spend a significant amount of time going through various employee and corporate records. This burden outweighs the likely benefit of this discovery. Thus, the Court finds that Electrolux is not entitled to question Travelers regarding this topic.

IV.     **Travelers' website and blog postings where Travelers advises homeowners to clean and maintain their clothes dryers and venting.**

The next topic encompasses seven specific websites (Topics 5—11) and a catchall topic (Topic 12) regarding collections of information prepared by Travelers between 2002 to the present regarding dryer fires, clothes dryer maintenance, and clothes dryer cleaning. Travelers argues that these websites and blog postings are not relevant nor are they reasonably calculated to lead to the discovery of admissible evidence, again emphasizing that its conduct is not at issue in this case. The Court disagrees.

Whether the fire was caused by an inherent defect in the dryer or the comparative negligence of the Rouses is one of the central issues in this case. Information prepared by Travelers regarding proper dryer maintenance, regardless of whether the Rouses actually viewed the website, goes directly to the claims and defenses in this case and is thus reasonably calculated to lead to the discovery of admissible evidence. As a result, the Court finds Electrolux is entitled to question Travelers regarding topics 5—11. The Court will however limit the inquiry to the two years before the fire.

Topic 12 is another story. Topic 12 seeks "[a]ny other articles, blogs, letters, audio recordings, video recordings, or any other documents regarding clothes dryer fires, clothes dryer maintenance, and clothes dryer cleaning prepared by Travelers from 2002 to the present, including all drafts and revisions." As stated above, the Court may limit the frequency or extent of discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit. See, *Fed R. Civ. P* 26(b)(2)(C). Here, the Court finds the burden of this topic outweighs the likely benefit of this discovery. As a result, Electrolux may not question Travelers regarding topic 12.

8

**V.      Travelers' training of the party that handled the investigation of the claim on Travelers' behalf.**

The last category of contention revolves around "[t]he training of the persons handling the adjustment and investigation of this claim on Travelers' behalf or on behalf of a related Travelers' company." (Topic 14).

It should be noted that Travelers has already agreed to produce its Claims adjuster. Therefore, the only issue for the Court to decide is whether Electrolux is entitled to question Travelers' 30(b)(6) witness regarding Travelers' training of the persons that handled the investigation of the claim.

Electrolux argues that it simply wishes to probe how the investigators were trained, presuming that theses persons told Travelers that the dryer was defective and again, presuming that the investigators' recommendation formed the basis for Travelers' decision to pursue this claim. The Court fails to see the relevance of the training given to the investigators. As noted above, Travelers has already agreed to produce the Claims Adjuster for this case. As a result, the Court finds that the likely benefit of this topic of discovery is outweighed by its burden.

9

**<u>Conclusion</u>**

For the reasons state above, Plaintiff's Motion to Quash Defendant's Rule 30(b)(6) Deposition Notices is granted in part and denied in part and Defendant's Motion to Compel is granted in part and denied in part.

ENTER:

_____

P. Michael Mahoney, Magistrate Judge
United States District Court

DATE:_____April 2, 2013_____

10